# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

GREAT CAESARS GHOST LLC,

        Plaintiff,

   v.

CINDY UNACHUKWU,

        Defendant.

Case No.: 2:19-cv-5408 (JMV)(JBC)

## DECLARATION OF JOHN KRIENS IN SUPPORT OF PLAINTIFF'S APPLICATION TO HOLD DEFENDANT IN CONTEMPT, FOR ADDITIONAL TEMPORARY RESTRAINTS, AND FOR A PERMANENT INJUNCTION

**JOHN KRIENS** hereby certifies and declares as follows:

1.     I am the owner and operator of plaintiff Great Caesars Ghost LLC ("GCG").  As such, I have personal knowledge of the facts of and background underlying this case.

2.     I am the sole shareholder of GCG and a New Jersey resident.

3.     I submit this Declaration in support of GCG's application to hold defendant Cindy Unachukwu ("Defendant") in contempt of the Court's preliminary injunction (D.E. 29) based upon her blatant violation of that Order on February 13 and 14, 2020, detailed below.  GCG also seeks to convert the preliminary injunction into a permanent injunction based upon Defendant's inexcusable misconduct, which has caused GCG to suffer irreparable harm.

**I.     Given The Nature of GCG's Business, GCG's Positive Business Reputation And Good Will Are Critically Important.**

4.     As the Court may recall, GCG buys merchandise from vendors and sells that merchandise online.  GCG's online commerce business is almost entirely focused on the Amazon.com sales platform.

5.     The intangible reputation and good will of "Sellers" through Amazon's platform

(like GCG) is of paramount importance in three distinct, but related, ways.

6.      The first involves customer reputation.  Amazon facilitates the collection and public display of comprehensive feedback on Sellers by customers.  As customers make purchase decisions, they can learn how well-regarded each Seller is from prior customers who purchased products from the same Seller.

7.      Customers can browse extensive feedback to identify areas where the Seller performs poorly.  Customers commonly avoid buying from Sellers with a track record of poor feedback from past customers.

8.      GCG, therefore, actively analyzes and manages customer feedback, from quality control on the inventory acquisition side to customer support if problems occur after purchase.

9.      The second aspect involves Amazon's reputation.  As the world's largest online retailer, Amazon carefully polices its Seller community to discover and address any "bad apples," because Amazon's overall reputation is tied to the reputations of individual Sellers allowed to sell there.  This policing has become more important in recent years as the volume of counterfeit or suspect goods sold on the platform increased.  Amazon takes very seriously any allegation of Sellers selling inauthentic products, and takes a guilty-until-proven-innocent approach to each individual allegation.  Despite an overall positive reputation, the accumulation of "inauthentic" claims against a Seller can trigger Amazon to suspend or revoke entirely a Seller's selling privileges.

10.     Such a suspension or revocation would likely put GCG out of business.

11.     The third aspect is vendor reputation.  Though vendors lack the same public customer feedback mechanism as Sellers, customers often avoid Sellers alleged to offer inauthentic products for sale.

12.     Based upon these three intertwining aspects, GCG's positive business reputation and good will with its customers, its vendors, and Amazon itself are fundamental and essential to its very survival as a small business.

## II.     Defendant First Violates Her Separation Agreement With GCG By Threatening To Defame GCG To Amazon.

13.     Defendant is a former independent contractor with GCG.  In that role, she had access to information about GCG's clients and vendors, including the contact information for GCG's points of contact with its vendors and clients.

14.     Defendant's business relationship as an independent contractor with GCG ended on December 3, 2018.

15.     On or about December 21, 2018, Defendant and GCG voluntarily entered into a separation agreement under which Defendant received additional compensation in exchange for certain promises (the "Separation Agreement").

16.     On or about January 7, 2019, GCG notified Defendant of its intent to pursue litigation based upon its investigation of certain facts which GCG contended implicated Defendant in violating the Separation Agreement.  This included her threat to disparage GCG (and me personally) to Amazon.

17.     Defendant made numerous threats to lodge false "inauthentic" allegations against GCG to Amazon.  She made these threats in writing, which documented her intent to contact Amazon and some of GCG's suppliers.

18.     On January 9, 2019, for example, she wrote an email entitled: "Suspension coming," in which she threatened to contact "all" companies with which GCG does business and, after which, GCG "will be finished."  She ended her threat: "Please try to sue me.  I will NEVER stop until you are DONE with."

19.     The Parties subsequently resolved all disputes between them amicably and under the terms memorialized in a Confidential Settlement and General Release of claims dated January 23, 2019 (the "Settlement Agreement"), a copy of which is attached to the Complaint as Exhibit 1.

20.     In exchange for more money above what she was paid under the Separation Agreement, Defendant agreed to honor a comprehensive non-disparagement provision which prevented her from making derogatory, insulting, critical, defamatory, or disparaging remarks or comments to anyone (including but not limited to Amazon) with business dealings with GCG. *See* Exh. 1, ¶9.

11.     Based upon Defendant's prior threats to disparage GCG to its vendors and online distributors (and destroy GCG), the non-disparagement provision of the Settlement Agreement was an essential, material term of the parties' agreement.

### III.   Defendant Then Violates Her Settlement Agreement With GCG By Again Threatening To Defame GCG To Amazon.

12.     Shortly after the Settlement Agreement was consummated, Defendant resumed her prior threats to defame, disparage, and destroy GCG.

13.     On February 4, 2019, for example, Defendant threatened to call Amazon directly and promised, "I AM GOING TO TAKE YOUR COMPANY AWAY FROM YOU."

14.     On February 11, 2019, Defendant admitted she contacted GCG vendors, including Macy's and Bobbi Brown Cosmetics, and made insulting, critical, defamatory, and disparaging comments about GCG, in direct violation of the non-disparagement provision of the Settlement Agreement.

15.     At 8:05 AM on February 11, 2019, for example, Defendant sent GCG's counsel an email entitled "PROOF" and the following message about me:

4

> JOHN KRIENS IS A LIAR, THEIF [sic] AND DISHONEST
>
> NOW - Here are the direct numbers of corporate managers from Macy's, Bobbi Brown to prove to you that I just called them today and left msgs for them to call me back in regards to the unauthorized sale of their products on Amazon.com. Once they call me back I will tell them EVERYTHING
>
> Bobbi Brown Cosmetics Ext **[contact information redacted]** – Emerald [contact information redacted]
>
> Macy's - Macy's Corporate mgr- Jackie
> **[contact information redacted]**
>
> Wendy Johnson- Top Macy's Mgr
> **[contact information redacted]**

A copy of Defendant's February 11, 2019 8:05 AM email is attached to the Complaint as Exhibit 2.

16.     Defendant's assertion that GCG engaged in "the unauthorized sale of [] products on Amazon.com" is knowingly false.

17.     One minute later, at 8:06 AM on February 11, 2019, Defendant sent another email stating: "Today I will spend ALL day getting the right people in charge in regards to GCG getting audited by the IRS."

18.     At 8:51 AM on February 11, 2019, Defendant sent a third email also entitled "PROOF" and containing the contact information of Jacqulyn Seye, Liaison, Omnichannel Executive Office of Macy's, Inc.—alluding that Defendant either already contacted or planned to contact Ms. Seye to disparage GCG. A copy of Defendant's February 11, 2019 8:51 AM email is attached to the Complaint as Exhibit 4.

19.     To stop Defendant's senselessly destructive and lawless misconduct, GCG filed its Complaint on February 11, 2019.

**IV.    The Court Grants GCG's Renewed Application For A TRO And Restrains Defendant From Disparaging GCG Or Its Officers, Including Me.**

21.     On March 8, 2019, the Court denied GCG's first application for injunctive relief. (D.E. 19).

22.     Emboldened by the Court's decision, Defendant promptly resumed her pattern of defaming and disparaging GCG and me.

23.     On Tuesday, March 12, Defendant accessed Facebook and sent a defamatory, outrageous, and disparaging message to my personal and business "Friends" on Facebook.

24.     This public message falsely accused me of (i) hacking into her internet accounts; (ii) deleting items in her Ebay account; (iii) resetting her PayPal and Ebay passwords; (iv) deleting various documents from her personal laptop; and (v) violating her privacy.  All of these accusations are absolutely and completely false.

25.     Defendant then confirmed to GCG counsel in writing she sent the derogatory and defamatory message to "all" of my Facebook friends.

26.     She also sent more threatening emails to my counsel at 4:25 pm on March 12, (warning that GCG "has MORE to lose than" her), and on March 19 (in which she threatens GCG with financial ruin).

27.     To be sure she actually followed through on her claim of messaging my Facebook friends, I contacted several business contacts who all confirmed they received Defendant's March 12 derogatory and defamatory message.

28.     For example, Scott Margolius, who owns and operates GCG vendor FeedbackRepair.com, confirmed he received Defendant's message.

29.     Besides Defendant's March 12 message, I also located a January 3, 2019 email message from another of Defendant's email addresses to Amazon's fraud department.  In that

6

email, she contacted Amazon directly and expressed her "willingness to share" false and

disparaging information that GCG is "operating WITHOUT proper authorization."

30.     Because of this new misconduct, the Court held an in-person hearing on March

27, 2019 and issued a temporary restraining order (the "TRO") against Defendant that day.

(D.E. 25). *See* **Exhibit 1**.

**V.     The Court Converted The TRO Into A Preliminary Injunction Against Defendant
On April 11, 2019.**

31.     On April 10, 2019, the Court held another in-person hearing, during which

Defendant offered no evidence to oppose entry of a preliminary injunction.

32.     As such, the Court granted GCG's application and converted the TRO into a

preliminary injunction ("PI") on April 11, 2019.  (D.E. 29)  *See* **Exhibit 2**.

33.     Like the TRO, the PI also enjoined Defendant from violating the Non-

Disparagement Clause of her Confidential Settlement Agreement and General Release with

GCG, and specifically stated "Defendant may not

> [m]ake any remarks or comments, orally, in writing, or via social media, to the
> media or others (including but not limited to Amazon) who have, or could
> reasonably be anticipated to have, business dealings with [Plaintiff], which remarks
> or comments could be construed to be derogatory, insulting, critical, defamatory,
> or disparaging to [Plaintiff] or any of its officers, directors, employees, attorneys or
> agents, or which reasonably could be anticipated to be damaging or injurious to
> [Plaintiffs] reputation or good will or to the reputation or good will of any person
> associated with [Plaintiff]."

*Id*. at 1.

34.     Following that in-person hearing and entry of the PI, it appeared Defendant

understood the gravity of the situation; would honor the promises she made to GCG in our

December 21, 2018 Separation Agreement and January 23, 2019 Settlement Agreement; would

stop defaming and disparaging GCG; and simply leave GCG alone.

VI.     **Acting In Utter Contempt Of This Court's Rulings, Defendant Violated The PI By Disparaging GCG And Me to Amazon And Macy's On February 13-14, 2020.**

36.     After several months of peace and with no contact from Defendant, Defendant left several voicemails for GCG's counsel in the morning of February 13, 2020.

37.     In one voicemail left at 10:10 a.m. that morning, Defendant threatened she was "bringing down" GCG and that "Great Caesar's Ghost is going to be no more."

38.     In a series of emails sent by Defendant to me and GCG's counsel that morning, Defendant mistakenly asserted I or GCG's counsel re-sent emails to her from early 2019. Neither I nor GCG's counsel sent Defendant any emails in 2020.

39.     In her 11:34 a.m. email sent on February 13, Defendant nonetheless indicated her intent to disparage me and GCG to Amazon:

> . . . I will be going to Amazon office in Herald Square tomorrow morning and letting them know that John Kriens Amazon has sold FAKE items. The will have them shut down the store while the investigation is going on. . . . I am getting evicted Feb 28th 2020 so I have NOTHING to lose. . . .

*See* **Exhibit 3**.

40.     At 12:08 p.m. that afternoon, GCG's counsel advised Defendant no such emails were sent, and reminded her that the PI remained in full force and effect, provided her with another copy of the PI, and cautioned that if she contacted Amazon as she threatened, GCG would be forced to commence contempt proceedings against her. *See* Exh. 3.

41.     Remarkably, at approximately 12:30 p.m. that day, Defendant then conferenced GCG's counsel into a three-way call with a representative of Amazon on the line.  Though GCG's counsel again verbally reminded Defendant of her obligations under the PI, she basically repeated the same spurious and false allegations to the Amazon representative stated above—while GCG's attorney was on the line.

42.     In a follow-up call to GCG's counsel, Defendant said the reason she had GCG's counsel on the line while she disparaged me and GCG to Amazon was to make sure we knew "she was not bluffing this time."

43.     In a follow-up email sent at 2:02 p.m. and entitled "shut down," Defendant confirmed in writing she "kept [her] word," and she planned to disparage me and GCG to additional vendors including The Cosmetics Company Store and Marshalls. *See* **Exhibit 4**.

44.     In two more emails sent on February 13 at 4:39 p.m. and 6:19 p.m., Defendant disparaged and defamed me and GCG in writing to Amazon.com, in direct violation of the PI. *See* **Exhibits 5 and 6**.

45.     In yet more emails sent on February 13, 2020 (at 4:49 p.m.) and one sent on February 14, 2020 (at 8:51 a.m.), Defendant disparaged and defamed me and GCG to Macy's, again in direct violation of the PI.  *See* **Exhibits 7 and 8**.

46.     In another email of February 13 (sent at 4:54 p.m.) entitled "shut down," Defendant confirmed in writing she will send out more emails to more companies and "IT WILL ONLY [BE] A MATTER OF TIME AFTER THAT." *See* **Exhibit 9**.

## VII.   GCG Will Suffer Immediate And Irreparable Harm If Defendant Is Permitted To Violate The Preliminary Injunction And Needlessly Defame And Disparage GCG.

47.     As her own emails state, disparaging or defamatory comments made by Defendant to GCG's customers, vendors, or Amazon will cause significant and irreparable harm to GCG which cannot be remedied in monetary terms.

48.     Due to Defendant's misconduct, GCG has sustained irreparable damages.  GCG has suffered damage to its goodwill and reputation with its vendors due to Defendant's breach of her contractual obligations under the Settlement Agreement and her willful violation of the Court's orders.

9

49.     GCG also must now expend its limited resources in time, money, and manpower to work with Amazon, Macy's, and possibly others, to undo the effects of Defendant's actions.

50.     If Amazon gives credence to Defendant's false claims, Amazon may suspend or revoke GCG's selling privileges on the platform.

51.     It will take GCG more than one month to appeal and overturn a suspension by Amazon, and much longer to appeal full revocation of Selling privileges.  The short-term damage to GCG could very well be insurmountable for our small business.

52.     Even if GCG could survive a short-term loss of its selling privileges on Amazon, it will never recover from the harm to its reputation and good will.  The long-term damage to GCG's reputation would crush GCG's ability to succeed as an Amazon Seller because customers would divert their business to Sellers with better reputational scores.  The long-term damage caused by GCG's lost reputation and good will is impossible to estimate.

53.     Indeed, GCG will likely be forced to ceased operation if Amazon gives any credence to Defendant's false and defamatory claims.

54.     And even if we could calculate our losses, Defendant told us on numerous occasions she has no money, property, or assets, is close to eviction from her home, and is judgment-proof.

55.     Absent making the preliminary injunction permanent and punishing Defendant for her contemptuous disregard of this Court's orders, GCG will continue to suffer immediate and irreparable harm.

56.     A permanent injunction is warranted here because GCG has once again established it suffered an irreparable injury and monetary damages are inadequate to compensate for the injury

57.     Moreover, the balance of hardships weighs entirely in favor of GCG and the public interest is not disserved by a permanent injunction.

58.     Indeed, Defendant will sustain no harm whatsoever if she is ordered by the Court to simply adhere to her obligations under the Court's orders.

59.     We ask only that the Court stop Defendant from taking actions which she is already prohibited by court order from taking; compel her to reimburse GCG for its counsel fees expended in defending itself from her recent misconduct; and order her to leave me and my company alone.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Newark, New Jersey
February 15, 2020

_____
JOHN KRIENS

WSACTIVELLP.11298179.1

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

GREAT CAESARS GHOST LLC,

     *Plaintiff,*

    v.

CINDY UNACHUKWU,

     *Defendant.*

Civil Action No. 19-5408

**ORDER**

**John Michael Vazquez, U.S.D.J.**

    Currently pending, by way of an Amended Verified Complaint and new factual evidence, is a renewed application for a Temporary Restraining Order and Preliminary Injunction filed by Plaintiff Great Caesars Ghost LLC. D.E. 21. The Court held a hearing on March 27, 2019 as to Plaintiff's request for a temporary restraining order. At the hearing, Defendant Cindy Unachukwo appeared *pro se.* For the reasons set forth on the record and for good cause shown

    IT IS on the 27th day of March, 2019,

    **ORDERED** that Plaintiff's renewed motion for a temporary restraining order, D.E. 21, is **GRANTED**; and it is further

    **ORDERED** that Defendant is temporarily enjoined from violating the Non-Disparagement Clause of the parties' Confidential Settlement Agreement and General Release. *See* Compl. Ex. A, D.E. 6-1. Therefore, Defendant may not

> [m]ake any remarks or comments, orally, in writing, or via social media, to the media or others (including but not limited to Amazon) who have, or could reasonably be anticipated to have, business dealings with [Plaintiff], which remarks or comments could be construed to be derogatory, insulting, critical, defamatory,

or disparaging to [Plaintiff] or any of its officers, directors, employees, attorneys or agents, or which reasonably could be anticipated to be damaging or injurious to [Plaintiff's] reputation or good will or to the reputation or good will of any person associated with [Plaintiff];

and it is further

  **ORDERED** that the Court's prior Order, D.E. 19, is hereby rescinded in light of this Order;

and it is further

  **ORDERED** that pursuant to Federal Rule of Civil Procedure 65(c), Plaintiff shall post security in the amount of a $5,000.00 bond; and it is further

  **ORDERED** that as to Plaintiff's motion for a preliminary injunction, the following schedule applies:

1. Defendant shall submit any opposition by April 4, 2019;

2. Plaintiff shall submit its reply by April 8, 2019; and

3. The Court will hold a hearing at 4:00 p.m. on April 10, 2019 in Courtroom Three of the Lautenberg U.S. Post Office and Courthouse, 2 Federal Square, Newark, New Jersey;

and it is further

  **ORDERED** that the Clerk of the Court shall serve this Order on Plaintiff by regular and certified mail return receipt.[1]

John Michael Vazquez, U.S.D.J.

---

[1] During the hearing on March 27, 2019, the Court also verbally notified Defendant of the temporary restraining order as well as of the upcoming schedule as to the preliminary injunction.

2

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

GREAT CAESARS GHOST LLC,

       *Plaintiff,*

  v.

CINDY UNACHUKWU,

       *Defendant.*

Civil Action No. 19-5408

**ORDER**

---

**John Michael Vazquez, U.S.D.J.**

    For the reasons set forth on the record on April 10, 2019, and for good cause shown,

    IT IS on the 11th day of April, 2019,

    **ORDERED** that Plaintiff's motion for a preliminary injunction (D.E. 6) is **GRANTED**;

and it is further

    **ORDERED** that the temporary restraining order that was entered on March 27, 2019 is

hereby converted to a Preliminary Injunction; and it is further

    **ORDERED** that Defendant is enjoined from violating the Non-Disparagement Clause of

the parties' Confidential Settlement Agreement and General Release. *See* Compl. Ex. A, D.E. 6-

1. Therefore, Defendant may not

> [m]ake any remarks or comments, orally, in writing, or via social media, to the
> media or others (including but not limited to Amazon) who have, or could
> reasonably be anticipated to have, business dealings with [Plaintiff], which remarks
> or comments could be construed to be derogatory, insulting, critical, defamatory,
> or disparaging to [Plaintiff] or any of its officers, directors, employees, attorneys or
> agents, or which reasonably could be anticipated to be damaging or injurious to
> [Plaintiff's] reputation or good will or to the reputation or good will of any person
> associated with [Plaintiff];

and it is further

      **ORDERED** that as to the preliminary injunction, Plaintiff must maintain the $5,000.00 bond that it posted for the temporary restraining order; and it is further

      **ORDERED** that Defendant must file a response to Plaintiff's Amended Verified Complaint (D.E. 6-1) by Wednesday, May 15, 2019; and it is further

      **ORDERED** that the Clerk of the Court shall serve this Order on Plaintiff by regular and certified mail return receipt.

_____
John Michael Vazquez, U.S.D.J.

2

# EXHIBIT 3

| | |
|---|---|
| **From:** | Mark A. Saloman |
| **Sent:** | Thursday, February 13, 2020 12:08 PM |
| **To:** | cindy cindy |
| **Subject:** | RE: Cindy Unachukwu [IWOV-WSACTIVELLP.FID1898500] |
| **Attachments:** | GCG - Cindy - Order granting Preliminary Injunction (DE 29).PDF |

Cindy, I checked with John and he confirms he sent you no emails since early 2019. He does not know the origin of the recent emails you reference, but they did not come from him or GCG.

As a reminder, the April 11, 2019 injunction against you remains in full force and effect.  Another copy of the Court's Order is attached for your convenience.  If you contact Amazon as you describe below, GCG will have no choice but to commence civil contempt proceedings against you.  We sincerely hope that will be unnecessary.

Finally, please direct all communication to me, not to GCG or its employees.  Thank you very much.

**Mark A. Saloman | Partner and Co-Chair, Non-Compete, Trade Secrets & Business Litigation Group**
**FORDHARRISON LLP**
300 Connell Drive, Suite 4100, Berkeley Heights, New Jersey 07922
Direct: 973.646.7305 | Cell:  973.342.0106 | Fax:  973.646.7308
msaloman@fordharrison.com | www.fordharrison.com

Ius Laboris UNITED STATES | Global Human Resources Lawyers
www.iuslaboris.com | www.globalhrlaw.com

**From:** cindy cindy [mailto:cindy20m@yahoo.com]
**Sent:** Thursday, February 13, 2020 11:34 AM
**To:** Mark A. Saloman <Msaloman@fordharrison.com>; Business Partner <jkriens@me.com>; jkriens@gmail.com; Robert Banarez <rbanarez.amazon@gmail.com>
**Subject:** Re: Cindy Unachukwu [IWOV-WSACTIVELLP.FID1898500]

Mark,

As you CLEARLY see the emails came from John Kriens. Look at the email. I am on the phone with Federal Court House now. I will be going to Amazon office in Herald Square tomorrow morning and letting them know that John Kriens Amazon has sold FAKE items. The will have them shut down the store while the investigation is going on. I still have the bottles and code number that was put on the bottles by John and sold on his store and Rob's store. I am getting evicted Feb 28th 2020 so I have NOTHING to lose. Mark you will need to find another business to invest in. A proper settlement should have been made.

On Wednesday, February 12, 2020, 3:56:28 PM EST, Mark A. Saloman <msaloman@fordharrison.com> wrote:

Cindy, I just returned to the office and have reviewed the documents you sent.  Please be assured we have sent you no emails since September 2019.  I do not know the origin of the emails you reference, but they did not come from me or my office.  Thank you.



**Mark A. Saloman** - *Attorney at Law*

**FordHarrison LLP - Ius Laboris USA | Global HR Lawyers** 

300 Connell Drive, Suite 4100 | Berkeley Heights, NJ 07922
Msaloman@fordharrison.com | P: 973-646-7305 | C: 973-342-0106

**LTC4 Certified Legal Professional | *FHPromise***

**From:** cindy cindy [mailto:cindy20m@yahoo.com]
**Sent:** Wednesday, February 12, 2020 9:54 AM
**To:** Mark A. Saloman <Msaloman@fordharrison.com>
**Subject:** Cindy Unachukwu

I was just innocently looking over past emails. Those emails weren't sent from me.  Saying "RAPED".  The words in the email doesn't even sound like me.  I left this along after the last court date.  I truly and honestly left this aside after the last court date.

Omg.  Just don't understand why this was done.  Ok then.  I'm getting evicted Feb 28. So now.  Ok.
Sent from Yahoo Mail for iPhone

*ATTORNEY WORK PRODUCT - PRIVILEGED & CONFIDENTIAL*

Ius Laboris USA Global HR Lawyers
**FordHarrison**

The information contained in this message from Ford & Harrison LLP and any attachments are privileged and confidential and intended only for the named recipient(s). If you have received this message in error, you are prohibited from reviewing, copying, distributing or using the information. Please contact the sender immediately by return email and delete the original message and attachments. In the absence of an executed engagement letter or fee contract, no attorney client relationship is established by this communication.